1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10  | LANDON REYNOLDS, a single individual,          CASE NO. C12-0488-RSM

11  |                                                ORDER GRANTING
    |                          Plaintiff,           DEFENDANT'S MOTION FOR
                                                    APPLICATION OF OREGON LAW
12  |              v.

13
    | CENTIMARK CORPORATION, a
14  | Pennsylvania corporation,

15  |                          Defendant.

16

## I. INTRODUCTION

This is a personal injury lawsuit on behalf of Plaintiff Landon Reynolds against

Defendant CentiMark Corporation for negligence. Dkt. # 1. This matter comes before the Court

on Defendant's motion for the application of Oregon law (Dkt. # 27), the determination of which

was stayed by the Court pending a period of limited discovery (Dkt. # 60). Having considered

the parties' additional briefing and declarations, the Court finds that Oregon law shall apply.

17
18
19
20
21
22
23
24

## II. BACKGROUND

**A. Statement of Facts**

Plaintiff Landon Reynolds is a resident of Snohomish County, Washington. Defendant CentiMark Corporation ("CentiMark") is a Pennsylvania corporation that has its principal place of business in Washington County, Pennsylvania, but conducts business throughout the United States. CentiMark has offices in both Washington and Oregon.

In 2010, CentiMark was the general contractor for the removal and replacement of a roof on the BG Plaza medical professional building in Beaverton, Oregon. CentiMark entered into a subcontract agreement with Big Lead Enterprises, LLC ("Big Lead"), a Washington limited liability company, requiring Big Lead to remove the existing roof of the building. CentiMark signed and executed the contract with the building owner and the subcontract with Big Lead through its Oregon office.

Employed by Big Lead in July 2010, Plaintiff was injured while working on the project when he fell through a skylight on the roof of the building. At the time of the accident, there were employees from both Big Lead and CentiMark on the roof of the building. There was also no cover on the skylight or a guardrail or protective system to prevent falls.

Reynolds originally filed suit in King County Superior Court. CentiMark removed the case to this Court and moved to transfer venue to the District of Oregon and to apply Oregon state law. The Court denied CentiMark's motion to transfer venue and granted Reynold's request for leave to conduct limited discovery related to the choice-of-law issue. Dkt. # 60. CentiMark's motion to apply Oregon law is now fully briefed and ripe for review.

# III. DISCUSSION

## A. Choice of Law

Reynolds brought this action under Washington law. CentiMark contends that Oregon law applies to Plaintiff's claims. For diversity actions arising under 28 U.S.C. § 1332, federal courts apply "the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). In Washington, courts must determine whether an actual conflict of law exists before engaging in the choice of law analysis. *Seizer v. Sessions*, 132 Wash. 2d 642, 648, 940 P.2d 261 (Wash. 1997). If no actual conflict exists, the presumptive local law applies. *Id.* at 649. An actual conflict arises in cases where "the result of the issues is different under the laws of the two states." *Id.* at 648. In the event that an actual conflict exists, Washington courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 145 (1971). *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (W.D. Wash. 2006) (citing *Johnson v. Spider Staging Corp.,* 87 Wash. 2d 577, 580, 555 P.2d 997 (Wash. 1976)). This test requires courts to weigh the parties' contacts by evaluating (1) where the injury occurred, (2) where the injurious conduct occurred, (3) the parties' place of incorporation, place of business, domicile, or place of residence, and (4) the place where the parties' relationship was centered. *Id.* at 1176. The "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Johnson,* 87 Wash. 2d at 581. If the contacts are evenly balanced between the parties, courts then "consider 'the interests and public policies' of the concerned states." *Brewer*, 447 F. Supp. 2d at 1176 (quoting *Johnson*, 87 Wash. 2d. at 582).

Here, the parties agree that an actual conflict exists between Washington and Oregon law. Dkt. # 27, pp. 10-12; Dkt. # 39, pp. 7-8. Under Washington law, general contractors owe a duty of care to employees of subcontractors as a matter of law. *Stute v. P.B.M.C., Inc.*, 114 Wash. 2d

454, 463-64, 788 P.2d 545 (Wash. 1990) Under Oregon law, the general contractor's duty depends on the facts of each case and often requires plaintiffs to prove the existence of a common enterprise or that the general contractor retained or exercised control. *Woodbury v. CH2M Hill, Inc.*, 335 Or. 154, 160, 61 P.3d 918 (Or. 2003).  Because a conflict exists, the Court addresses each of the § 145 factors in turn.

1.  Place where injury occurred

"In personal injury cases, the most significant contact is presumptively the place where the injury occurred." *Brewer*, 447 F. Supp. 2d at 1176 n.5 (citing *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wash. App. 256, 261-62, 115 P.3d 1017 (Wash. Ct. App. 2005)). However, this presumption does not compel the application of that state's law, *Johnson*, 87 Wash. 2d at 580, and may be "overcome if another state has a greater interest in [the] determination of a particular issue," *Zenaida-Garcia*, 128 Wash. App. at 261-62. Here, the Court presumes that Oregon law applies because Reynold's injury occurred on the BG Plaza worksite in Beaverton, Oregon. Dkt. # 1.

2.  Place where conduct causing injury occurred

Plaintiff contends that the conduct causing his injury occurred in both Washington and Oregon. Dkt. # 39, p. 8. Plaintiff acknowledges that the injury was directly caused by the failure to "cover or barricade the skylight" but also claims that the injury was caused by a pattern of practice that had been established on jobs in Washington. *Id.* Specifically, Plaintiff contends that CentiMark established a pattern of practice when it (1) knew that Big Lead employees were working without adequate safety precautions, and (2) failed to correct the hazard. Dkt. # 73, pp. 3-4. The Court granted Plaintiff a sixty-day period to conduct limited discovery on whether CentiMark established a pattern of practice in Washington.

1       Plaintiff's supplemental response concedes that, at best, this factor is neutral. Dkt. # 73,

2 p. 7. Giving Plaintiff the benefit of the doubt that the evidence suggests a "pattern of practice" of

3 safety violations in both Washington in Oregon, the Court still finds that the balance of factors

4 favors Oregon law.

5     3.   <u>Residence, place of incorporation, and place of business</u>

6       Plaintiff resides in Washington. Defendant is a Pennsylvania corporation with its

7 principal place of business in Washington County, Pennsylvania. Dkt. # 1, p. 2. While Defendant

8 has significant contacts with Oregon because it conducts business from its Portland, Oregon

9 office, and it signed, executed, and managed the contract with Big Lead in Oregon, it also has

10 significant Washington contacts and maintains a Washington office. Dkt. # 27, pp. 2-3. This

11 factor favors Washington.

12     4.   <u>Place where the relationship, if any, between the parties is centered</u>

13       Plaintiff contends that his relationship with CentiMark is centered in Washington because

14 he worked on numerous Big Lead/CentiMark projects in Washington. CentiMark contends that

15 the relationship was centered in Oregon because the BG Plaza project was located in Oregon and

16 involved CentiMark's Portland office. CentiMark has the better argument. First, Plaintiff was a

17 Big Lead employee on the BG Plaza project, not a CentiMark employee. Although Plaintiff may

18 have entered into an employment agreement with Big Lead in Washington, it does not follow

19 that CentiMark's prior Washington contacts with Plaintiff created a Washington-centered

20 relationship. Plaintiff has not shown that CentiMark had any particular relationship to him, other

21 than that it entered into subcontracts with Big Lead for projects in Washington and Oregon

22 where Plaintiff worked for Big Lead. And second, CentiMark's Portland office bid for the BG

23 Plaza project, and the Portland office entered into the subcontract with Big Lead. *See* Dkt. # 29,

24 pp. 1-5. Plaintiff has not shown that CentiMark's Washington office had any connection to the

1   BG Plaza project, and while some Portland-based CentiMark employees had previously worked

2   on Washington projects (*see* Dkt. # 73, p. 7), the evidence does not show that the BG Plaza

3   project was controlled by a Washington group.  Here, the Portland office entered into the

4   subcontract with Big Lead for an Oregon project. CentiMark's relationship with Big Lead was

5   therefore centered in Oregon with respect to the BG Plaza project. Accordingly, Plaintiff's

6   relationship with CentiMark was centered in Oregon. This factor also favors application of

7   Oregon law.

8           The Court finds that two of the four § 145 factors favor application of Oregon law, that

9   one is neutral, and that only one favors Washington law. Moreover, the court determined that

10  because the injury occurred in Oregon, there is a presumption in favor of applying Oregon law.

11  Under Washington's "most significant relationship test," the public policy and interest test is

12  performed when the contacts are evenly balanced.  *Williams v. Leone & Keeble, Inc.*, 285 P.3d

13  906, 910 (Wash. Ct. App. 2012); *Johnson*, 87 Wash. 2d at 582. Because the § 145 factors are

14  dispositive, the Court need not address whether Washington's policies and interests outweigh

15  Oregon's in this case.[1]

16                          **IV. CONCLUSION**

17          Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

18  and the remainder of the record, the Court hereby finds and ORDERS:

19  _____

20          [1] In *Williams v. Leone & Keeble, Inc.*, 285 P.3d 906 (Wash. Ct. App. 2012), Division 3 of
    the Washington Court of Appeals was directed by the Washington Supreme Court to apply § 146
21  of the Restatement and the policies considerations outlined in *Johnson*, 87 Wash. 2d at 580 &
    583. It did not direct that court to first apply § 145, which is contrary to the inquiry set forth in
22  *Johnson* that requires courts to first evaluate contacts generally under § 145 before conducting an
    interest-balancing test. 87 Wash. 2d at 580-81. The appellate court complied with the directive
23  but noted that in doing so it must "assume that the application of § 145 is not dispositive."
    Williams, 285 P.3d at 912. As discussed above, review of the § 145 factors in this case
24  unambiguously favors the application of Oregon law.

1   (1)  Defendant's Stayed Motion for Application of Oregon Law (Dkt. # 27) is

2        GRANTED.

3   (2)  Defendant's Motion to Strike (Dkt. # 45, 9-11) is MOOT.

4   The Clerk is directed to forward a copy of this Order to all counsel of record.

5

6   Dated this 22nd day of March 2013.

7

8

9                         _____
                          RICARDO S. MARTINEZ
10                        UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION FOR APPLICATION OF OREGON LAW - 7